Your Honor, the Constitution guaranteed Mr. Valdez the right to a jury trial. That constitutional privilege also entails a concomitant right for the defendant to have a jury instruction for each element of the crime. Those are the words of the Supreme Court in United States v. Gowdene. And there's an in-depth report on that.  And the Supreme Court's judgment is that the Supreme Court's decision to grant jury instruction to a jury was a bank decision, which follows suit in Perez in 1997, pointing out that failure to submit a jury instruction deprives the or relieves the prosecution of the obligation to prove every element of the crime beyond a reasonable doubt. Of course, like every other — Justice Breyer — Counsel? Justice Breyer Sir. Justice Breyer Counsel, as I understand it, neither allows for harmless error despite the failure to instruct on an element. Is that true? Justice Breyer That's true to the extent you expressed it, sir. But the court should keep in mind that it is a constitutional right to be — Justice Breyer The extent that I expressed it is the only extent I meant. Justice Breyer Yes. Justice Breyer Let me ask you. As I understand it, there's a five-foot fence, goes for miles both directions, barbed wire on the top. And where they caught the man, there are American flags all over the place, a jack-in-the-box, a post office, huge post office. How can we call it — how do we avoid harmless error? Justice Breyer Because the trial centered around the entry, not around the found-in. There are two separate crimes under 1326. Actually, there's three, counting an attempt. But the found-in offense is a different offense from entry. And the government may charge in the conjunctive, prove in the disjunctive. But what this trial centered on was the entry, not on the found-in. And I'm not sure why — Justice Breyer When you say centered on, what do you mean by centered on? Justice Breyer Those were the instructions of the trial judge. The form of the verdict required a finding of entry. The preliminary instructions to the jury said this is a case of entry, not a case of being found in. The argument of the government before and after the evidence was about entry. However, the evidence was very disputed about where, how, when, why the entry occurred. The defendant's direct testimony was very contradictory. He said that there was no fence there, nothing about a five-foot fence. There was no foot fence, no markers, no boundaries. You recall this is not your ordinary defendant. He lives in a tomb. He drinks very heavily, I presume. Drugs very heavily, not your ordinary man on the street by any means. Kennedy Are you — oh, I'm sorry. Go ahead. Are you saying that he did not enter — he did not know he was entering the United States when he entered, but when he was caught, he recognized that he was in the United States? I mean, is that essentially what the factual vermin is? Well, the trial centered around the entry. It did not center around the found in. And he did not — as I recall his direct testimony, he was not asked either on direct or on cross, do you know you're in the U.S. right now? Now, where a person is found hundreds of miles from the border, of course, this Court will presume that he entered voluntarily because he stayed. But you don't know how long Mr. Valdez was in the United States. He might have entered that day. He might have entered three weeks previous. He kind of sleeps on the street, the way I gather it. So he might have been here a long time. He might have been here a very short time. And the distance from the border is really right on the border. The agent testified you could see the port of entry from where he was. Now, my vision is not good enough to see a mile and a half as the agent testified. So if you can see the port of entry, it's probably much less than a mile and a half. When he told the officer that he was Native American instead of a Mexican national, did he understand then that he was in the United States? Well, I suppose he did. If you lie about something, it could be a consciousness of guilt and it could be interpreted that way. But that doesn't mean his entry was voluntary. The word voluntary is different from the word knowledge. Both of those are common words that are in every single dictionary in the world, but they're different concepts. Knowledge means you're aware of something. Voluntary comes from the Latin stem volo, I want to. It's something you do of choice. If someone's mental state is that they don't have much of a mental state to begin with, but it's clouded further by drugs and alcohol, he may not be able to form the intent to voluntarily cross the border, assuming he did it himself. But the point here is that the government provided no evidence whatsoever of how, where, why, and the circumstances of the entry, which I objected to. And my words are very precise, actually. I said the court should instruct the jury that voluntariness is an element of the offense that the government has to prove. And I got that because it seemed in the prior case law of the circuit that that is what was implied in various decisions. And lo and behold, in Salazar-Gonzalez, there was a panel that agreed with me, something different. But anyway, the law in the circuit right now as we speak today is that voluntariness is separate from knowledge. And the record in this case is so clouded and so uncertain that the court cannot say beyond a reasonable doubt that the verdict would have been the same if they had been instructed that the circumstances of the entry had to be voluntary, found to be voluntary, as opposed to just being there. We claim that the government is not entitled to a presumption, even on a found-in offense, because the circumstances are that the fellow is right at the border. He's within eyesight of the border. And that's what the agent testified to. How do you distinguish Salazar? How do I distinguish it? I use it to support our position because it establishes that voluntariness is an element separate and distinct from knowledge. But getting back to Nieder and that line of analysis, then, why do you think the error wasn't harmless in this case? It was not harmless because the government did not show the circumstance. In Salazar, you had a group of 11 illegals, and it was such that the agents could see the footprints of 11 illegals approaching the fence. And on the other side of the fence, it's more of a herd, I would call it, with all due respect, that's 22 feet on the ground. And the agent followed those 22 feet as they left footprints on the ground. And lo and behold, here's 11 aliens, in addition to that defendant, Mr. Salazar, hiding under a bush. And so that's it. What's the difference? I mean, this fellow, there are no footprints. But if he lives in a tomb in a Mexican cemetery and he's found in the U.S. north of the border near a jack-in-the-box in a post office, he has to have walked across, whether you can see his footprints or not. True. True. But how did he walk across? Did he do so voluntarily or did he not do so voluntarily? Was he dragged across by his buddy? Well, there's no evidence of that. Excuse me, sir? There's no evidence, really, of that, is there? There's no evidence, but there doesn't have to be because it's a basic element of the offense. Even if he didn't take the stand and produce any evidence, the government has the burden of showing that the entry was voluntary. But in this case, isn't the circumstantial evidence as compelling here as the direct evidence in Salazar Gonzalez? I mean, you've got a fence at the cemetery. He doesn't have any recognition or remembrance of the fence, perhaps, but wasn't the testimony fairly clear that he did have to come over at least a five-foot fence to get into the United States? Conflict in the evidence, Your Honor. His testimony was that there was not a fence there. There was no markers. He lives there. I assume he's not drugged or intoxicated all the time, and he should know. A person who resides a short distance from the border should certainly know whether there's a fence or not. He should also know that there's a border there. I mean, at some point, his condition cuts both ways, doesn't it? I mean, he doesn't become a very reliable source at trial if his basic defense is noncompassmentist. Well, if I were a juror, I think you'd convince me, Your Honor, but that's a factual conflict. He knew the fence was there. He testified to that. No, he said where he lives across from the tomb, and it's this weird cemetery, that there's nothing there to mark the border. He was after wine. Here's what I'm referring to. Maybe you can correct me. Did you jump a fence? No. Do you remember, or are you testifying you didn't jump the fence? Answer. I don't think I jumped the fence because I was very drunk. I don't think even when you're not drunk, you could jump the fence because it's very high. Yeah, he knew it. In other words, he knew a fence was there. Somewhere there was a fence. Not everywhere, but there is a fence some places, yes. Can you tell us how high the fence is? The fence is about as high as the wall over there. And all those facts are in conflict. I mean, is the cemetery 5 miles from San Luis? Is it 18 miles? Depends whose version you believe. We have about less than a minute left. Do you want to say something? Yeah, I think I'll hold back 46 seconds worth. Thank you. They're from the government. Good morning, Your Honors. My name is Raynette Logan. I'm from the District of Arizona. I represent the United States, and I was a trial counsel in this case. The district court's failure to instruct a jury as to the defendant's voluntary return to the United States was harmless error in this case because the facts are clear beyond a reasonable doubt that the defendant would have been convicted but for that error. The facts in this case — Counsel, why couldn't a jury have believed, after watching the man testify and appraising him, if they had been instructed that intent was needed, why couldn't they have believed this guy is so nuts he could jump a fence and have no idea he was jumping the fence? He could have been so drunk he didn't even know he was climbing the fence because he's got this mental disability, evidently, just from looking at him. Everybody who meets him thinks there's something wrong with him mentally. And also, he's a heavy drinker. So why couldn't the jury decide that between the two things there's a reasonable doubt? I think neither says harmlessness has to be established beyond a reasonable doubt. That's correct, Your Honor. In fact, the jury did hear what the defendant said, and the jury believed the government in this case and the government's witnesses. How do we know that? They didn't get an instruction that he had to enter voluntarily, intentionally. Because, Your Honor, the evidence that was presented to the jury was, in fact, not contradicted. The only contradiction was in the defendant's own statements. He contradicted — No, no, no. I don't — the contradiction doesn't have to be expressed words. The jury got to see him testify so they could draw their own conclusions about the man. Also, the bare fact of living in a tomb in a Mexican cemetery and coming and looking for wine and being a heavy drinker, that's a set of facts from which inferences can be drawn. Yes, Your Honor. But also, we had a discussion with the judge regarding his drunkenness, and the drunkenness is not a defense in a general intent crime. Therefore — But I think Judge Kleinfeld's question is about the missing element of voluntariness. And you agree that the jury should have been instructed on that, right? Yes, Your Honor. The government does concede that issue, but the government also says that it was harmless error because of the overwhelming evidence in this case that was in front of the jury. And the jury heard all the evidence in this case, and the jury heard that the defendant was found one-and-a-half miles from the border, north of the border. He was — Right. But I think Judge Kleinfeld's question, and I share it, this was the defendant's central defense that he wandered over accidentally. And he wanted an instruction so that he could present that defense to the jury on voluntariness. Now, we know that they were missing an instruction on the element. Why is that harmless error? Well, Your Honor, actually, the defendant had probably about five different defenses. He said that he — first of all, he could not remember what happened that night, that the only thing that he remembered was when he was in the jail cell. Right. Yet he also argues that he could not have possibly jumped the fence, that because he was so drunk he couldn't have climbed over the fence. Yet the evidence in front of the jury by Agent Thayer was that when he asked the defendant, after reading him his Miranda rights and he gave a sworn statement, the defendant actually admitted that he illegally jumped the fence between Mexico and the United States. Now, after the fact, when the defendant took the stand, he testified that he must have either wandered across into the United States, because he says there wasn't a fence, although there was the testimony that there was a fence there that was at least five feet tall, at the point of the tomb. Although where the defendant was found, the fence was 10 to 12 feet high, as the defendant identified during his direct examination. But the defendant also says that he must have probably been dragged across the United States by the Border Patrol agent that was also a defense that the defendant had. The defendant had five different contradictory statements of his defense. Well, they all sort of go to voluntariness, don't they? Excuse me, Your Honor? They all go to voluntariness, right? I mean, he said, you know, I may not have remembered, I was too drunk, I accidentally could have been dragged over. All of that goes to the voluntariness instruction, which you can see now should have been given. Yes, Your Honor. And, in fact, the jury heard all of those different defenses. But they weren't instructed by the judge. Go ahead, Judge Kleinfeld. Counsel, I think the confusion in our understanding of your argument on this is you keep using the word defenses, but they're not defenses. He doesn't need any defense. The government has to prove intention beyond a reasonable doubt. That's correct, Your Honor. If intention is clear beyond a reasonable doubt, even without an instruction, that would be good enough under neither. But he doesn't need a defense of drunkenness. There is no such thing. Voluntary intoxication. He doesn't need any defense at all. So you have to show us where the government proved its case beyond a reasonable doubt on voluntariness so that it doesn't matter that the jury wasn't instructed on it. Yes, Your Honor. And the government states that the facts are clear in this case because the defendant was found a mile and a half into the United States. He was found on a four-lane highway. He was found in front of a United States post office, which said U.S. post office. It had a large U.S. flag. Agent Thayer said he had to have passed the jack-in-the-box, which also has a large United States flag. When he was found in front of this United States post office, when Agent Thayer approached the defendant and spoke to him, the defendant had the forethought to speak in English, and he said that he was a Native American born in Tucson, Arizona. He claimed to be a United States citizen. And when Agent Thayer asked him for his identification, he said he did not have any. And Agent Thayer asked him, well, how did you cross the border from Mexico into the United States if you did not have identification? These are all things that the defendant stated in forethought. He said that he was able to cross the border because the agents at the border knows him, so he didn't have to show his identification. Here's a problem I'm having with this. Back when I used to defend drunk drivers, someone was so drunk when they got caught, they had no idea what they were doing. By the time they got down to the police station, they'd sobered up enough to lie. I only had two beers was the typical one. Why isn't there room for the jury to conclude he was so drunk he didn't know what he was doing when he crossed the border, but by the time the cop caught him after the walk to the jack-in-the-box a mile and a half, he was sober enough to lie? Your Honor, even though the Border Patrol agent testified that it was a mile and a half, he could still see the border. So in the distance that it took him to walk from the border to where he was found, he was able to develop in his mind an excuse as to why he was in the United States. It wasn't even an excuse. It was an absolute defense that he was a United States citizen and he spoke in English. He knew exactly where he was at the time that he was caught. He was within the United States talking to a Border Patrol agent in English. The evidence is clear beyond a reasonable doubt. Is it true that it was prosecuted and instructed upon as an entry rather than a found-in case? The instructions in this case say that the defendant re-entered into the United States. That was the instruction that was given. The evidence in this case, though, goes beyond that. It goes also to how the defendant was found in the United States. And, in fact, the defendant admitted that he had illegally entered the United States when he jumped the fence. Going back to your question as to whether or not the jury should have considered the voluntary entry of ‑‑ received an instruction as to the voluntary entry and whether or not the jury should have considered that, what I was talking about with regard to the defendant's statements, not his defenses, but the jury was able to apprise of the defendant's statements when he took the stand. They were able to hear all of the defendant's statements when he took the stand. So they actually did apprise of whether or not the defendant was truthful, whether or not the defendant was telling the truth, and whether or not they should believe what the government agent says versus what the defendant says. That's what I was referring to when the defendant took the stand and gave five different statements as to how he entered the United States. So the government did hear all of the evidence in this case. They did hear from the Border Patrol agents as well as the defendant. And when the defendant took the stand, he basically says that he couldn't remember, which is basically having no evidence at all from the defendant in that case. And that is evidence that there was no evidence from the defendant that they can consider. So the only evidence in front of the jury is the evidence that the Border Patrol agent stated. And it's clear from the evidence that the Border Patrol agent stated that he voluntarily returned to the United States and that he was found in the United States one mile and a half from the border. Even if you were to at least conceive of the possibility of the defendant's statement that he lives in a tomb on the other side of the border near San Luis, that tomb is 18 miles from where he was found. He walked 18 miles within the United States. Therefore, he was voluntarily returned to the United States and he was found in the United States. Thank you, Your Honor. Cannot be stated as a fact that he walked 18 miles in the United States because we don't know which of the various versions of entry the jury would have accepted. That's why this cannot be declared to be harmless error. It is not at all clear when, where or how or even why he entered except he says he's looking for wine. In my remaining 26 seconds, I'd just like to point out to you the exception, specific exception in Nader that, for example, when defendant contested the omitted element and raised evidence sufficient to support a contrary finding, his direct testimony is that he did not have the mental wherewithal to form an intent to reenter. And I realize this creates a tension with specific intent versus general intent offenses in general, that the specific intent requires a mental state. General intent generally requires just merely knowledge or awareness. However, when voluntariness is introduced as an element of the offense, that whole situation changes because voluntariness by its nature means choice. It means a decision. It comes from the Latin word volo, which means I want to, versus nolo, which means I don't want to. So it is a conflict in the law. Thank you, counsel. Thank you, Your Honor. The case just heard will be submitted. We'll proceed to the next case on the oral argument calendar, which is Williams v. Covert. Thank you, Your Honor. We're missing counsel. Williams versus Jagger.
judges: Kleinfeld, Thomas, Leighton